**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**(Newark Vicinage)**

MOMS FOR LIBERTY,

Plaintiff,

v.

SCHOOL DISTRICT OF THE CHATHAMS BOARD OF EDUCATION;

ANN CICCARELLI, in her official capacity as President of the Board of Education;

SUSAN ROSS, in her official capacity as Vice-President of the Board of Education;

SALLY ALLEN, in her official capacity as a Member of the Board of Education;

CHRIS DELSANDRO, in his official capacity as a Member of the Board of Education;

KATHERINE PECK, in her official capacity as a Member of the Board of Education;

MICHAEL RYAN, in his official capacity as a Member of the Board of Education;

BRADLEY SMITH, in his official capacity as a Member of the Board of Education;

JILL CRITCHLEY WEBER, in her official capacity as a Member of the Board of Education;

YINGLU ZHANG, in her official capacity as a Member of the Board of Education; and

EMILY SORTINO, in her official capacity as District Superintendent,

Defendants.

Case No.

**VERIFIED COMPLAINT**

## VERIFIED COMPLAINT

Plaintiff Moms for Liberty brings this complaint against the School District of the Chathams Board of Education ("District") and District officials and alleges as follows:

## INTRODUCTION

1. Activist school boards across the country are radically interfering with the moral and religious development of the impressionable and suggestible children in their captive audiences by imposing "gender transition" policies. Under these policies, parents have no right to know of a child's supposed "social transition" to a gender other than their biological gender, which religiously motivated parents view as an ineradicable divine election, not a child's personal choice.

2. As alleged more particularly below, by enacting its Policy 5145.7, the District has followed this trend of arrogant usurpation of the constitutionally protected right of parents to guide the religious and moral formation of their children according to their belief in God, His creation of only two biologically determined sexes/genders—male and female—and the eternal destiny of every human soul as affected by conformity to His eternal law.

3. Policy 5145.7 falsely declares that: "The Commissioner of Education directs school districts to accept a student's asserted gender identity *regardless of parent* [sic] *consent or involvement.*" (emphasis added). There is no such "directive" from the Commissioner, but only an optional policy, Policy 5756, that no school district is *required* to adopt. The District is thus deceiving parents, as pleaded more particularly below.

4. Policy 5145.7, which is derived from said optional policy, specifically declares that if the student's parents are not aware of the student's request to "transition" to a "different gender" then a *school counselor* will have sole discretion to "assess *whether, and to what extent,*

*parents/guardians can be involved*"—that is, whether the supposed "gender transition" will be kept hidden from the parents.

5. Policy 5145.7 also compels a child's inappropriate participation with members of the opposite sex in sporting activities, as well as the presence of members of the opposite sex in locker rooms and bathrooms and changing and shower facilities, based solely on the "transitioning" child's mere declaration that he wishes to change "gender." The purported "trans" child's will is obeyed, even without the knowledge or consent of his parents, and with no agreement by other parents who would object to this imposition on their own children, which many view as a form of sexual harassment and child abuse. Only by requesting special arrangements that would stigmatize their child as allegedly "transphobic"—rather than simply religiously observant—could parents avoid some, but not all, of these compulsory exposures to morally, religiously, and physically inappropriate mixing of biological genders in gender-specific activities and in traditionally gender-specific facilities which involve various stages of undress and bathing.

6. Policy 5145.7 further provides that the child undergoing a secret "gender transition" must be addressed at school by the child's chosen pronouns according to the child's chosen new "gender" and that, in connection with the District's "harassment, intimidation and bullying" policy, Policy 5131.1, any refusal to honor the child's chosen pronouns and gender would constitute "harassment, intimidation or bullying." This aspect of Policy 5145.7 compels students (under threat of formal discipline), and their parents, to engage in falsehood that contradicts their religious faith by conforming their speech to the District's fanciful ideology of "gender identity." The District thus violates the Free Speech and Free Exercise Clauses of the First Amendment, threatening punishments based on the viewpoint and content of speech that departs from the official narrative on gender.

7. In its recent decision in *Mirabelli v. Bonta*, 146 S. Ct. 797 (2026), the United States Supreme Court declared an end to school boards' usurpation of parental rights with their novel "gender-transition" policies, holding that public school policies fostering supposed "gender-transitions" of children in secrecy from their own parents "substantially interfere with the 'right of parents to guide the religious development of their children'" and that such policies are not likely to survive the required strict scrutiny. *Id.* at 802 (quoting *Mahmoud v. Taylor*, 606 U.S. 522, 559 (2025).

8. Public school secret "gender transition" policies, *Mirabelli* further held, violate not only the Free Exercise Clause of the First Amendment, but also the Due Process Clause of the Fourteenth Amendment even as to those parents who object on secular grounds to this official usurpation of their parental rights. *Id.* at 803.

9. The Court in *Mirabelli* quoted its prior decision in *Mahmoud*, 606 U.S. at 559, wherein the Court struck down another "trendy" school board usurpation of parental rights: compulsory exposure of highly suggestible young children to "LGBTQ+-inclusive storybooks", thus exposing children at such an impressionable age to confusing concepts of "gender" identity that otherwise would never have occurred to most of them. The Court held that "[t]hese books carry with them 'a very real threat of undermining' the religious beliefs that the parents wish to instill in their children." *Id.* at 553 (quoting *Wisconsin v. Yoder*, 406 U.S. 205, 218 (1972).

10. *Mahmoud* further held, based on the Court's own precedents, that the imposition of any instruction or material that "substantially interferes with the religious development" of impressionable children violates the Free Exercise Clause because it constitutes "pressure to conform" to "a set of values and beliefs that are 'hostile' to their parents' religious beliefs." *Id.* at 505, 554 (quoting *Yoder*).

11. As more particularly pleaded below, the District has been apprised of the decisions in *Mirabelli* and *Mahmoud* by the undersigned counsel, and its response to counsel's demand for an end to Policy 5145.7 has been open defiance of the law of the land, with the District's School Board President, Defendant Ann Ciccarelli, declaring publicly that "The United States Supreme Court decision Mirabelli is ***not*** [spoken with emphasis] binding on public school districts in New Jersey."[1] The District falsely maintains that Supreme Court decisions are limited in scope to the state in which the case or controversy arose, which in *Mirabelli* was the State of California.

12. Policy 5145.7 is a facially unconstitutional violation of parental rights under the First and Fourteenth Amendments.

13. Further, when read in conjunction with the District's "harassment, intimidation and bullying" policy, Policy 5145.7 it is also unconstitutional, both facially and as applied, respecting its compulsory conformity to a "transitioning" student's preferred pronouns and purported new "gender identity" contrary to the religious beliefs of parents that such "transitioning" is not only impossible but objectively immoral. Moreover, the very compulsion to parrot the approved words is in itself a form of bullying of believers by school authorities demanding conformity with their ideology.

14. In view of the District's defiance of the Supreme Court, this action has been brought by Moms for Liberty, a social welfare organization whose mission includes the defense of parental rights in public schools, including the parental rights of two parents with young children in the District's school system: Parents A and B and Students C and D.

15. The parents and the two students must remain anonymous due to the threats and harassment the parents have already experienced because of their opposition to the challenged

---

[1] *Cf.* Board of Education Meeting of June 15, 2026, at https://youtu.be/OWnLVfj-a8I?t=4587

policies, including repeated doxxing by fanatical "pro-trans" ideologues who seek to incite violence against them, which required the posting of a police car outside their home.

## PARTIES

16. Moms for Liberty (MFL) is a national 501(c)(4) organization whose mission is to organize, educate and empower parents, including its members, to defend parental rights at all levels of government, including the public schools.

17. MFL's members include Parents A and B, and children C and D—both females—who are enrolled in the early grades of the District's elementary school system. MFL sues on behalf of these members based on its associational standing, as more particularly pleaded below.

18. Defendant School District of the Chathams Board of Education is the body corporate of the School District of the Chathams.

19. Defendants Ann Ciccarelli, President, Susan Ross, Vice President, Sally Allen, Chris Delsandro, Katherine Peck, Michael Ryan, Bradley Smith, Jill Critchley Weber, and Yinglu Zhang are the current members of the District's Board of Education (hereinafter, Board Defendants). The Board Defendants are responsible for the enactment, adoption, approval, ratification, and oversight of all District policies, including the District policies challenged here. The Board Defendants are sued in their official capacities.

20. Defendant Emily Sortino is the District Superintendent. Sortino is responsible for the oversight and enforcement of all District policies, including the District's policies challenged here. Sortino is sued in her official capacity.

## JURISDICTION AND VENUE

21. This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought via 42 U.S.C. § 1983 and § 1988.

22. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and § 1343, including MFL's claim for injunctive and declaratory relief.

23. Venue is proper under 28 U.S.C. § 1391 because the School District of Chathams is located in this judicial District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

### The Religious Beliefs of Parents A and B

24. Paragraphs 1-23 of this Verified Complaint are incorporated by reference.

25. Parents A and B are practicing Christians who sincerely believe that God created only two genders, male and female, and that the concept of gender is divinely limited to the male and female sexes. As Christians, they believe it would be morally wrong to deny one's God-given status as male or female and purport to be the opposite gender. They also believe that no public school has any right to interfere with the moral and religious formation of their children contrary to their religious beliefs against what they view as the immoral ideology of "transgenderism."

26. Parents A and B would oppose any purported "gender transition" by their children—under peer pressure, teacher influence, or otherwise—because they view such behavior as intrinsically disordered and contrary to God's will. Parents A and B would thus seek counseling to address what they view as the psychological disorder of gender dysphoria, should it actually present itself in either of their daughters.

27. Parents A and B also believe, as studies show, that any confusion about gender in a child's early formative years—especially when left undisturbed in childhood innocence—normally resolves itself naturally in favor of the child's biological sex. They thus believe that school counselors can do enormous harm to impressionable and suggestible children by

"affirming" a gender that is not the child's God-given gender of male or female. Parents A and B would regard any such "affirmation" regarding their children as a direct interference in their fundamental parental right to direct their children's upbringing.

28. Parents A and B also believe that no public official has the right to compel their children's speech in a manner contrary to their Christian beliefs, to compel their children's participation with members of the opposite sex in sporting activities traditionally reserved to girls, or to compel their presence with biological boys claiming to be girls (or some other imaginary "gender") in private spaces traditionally reserved to one sex for reasons of modesty and privacy, including bathrooms, changing facilities, and locker rooms.

29. Parents A and B have inculcated these beliefs in their children in accordance with their constitutionally protected right to control their children's religious and moral development without interference by public officials.

**The Adoption of Challenged Policy 5145.7**

30. On January 8, 2024, acting under color of state law, the District adopted the aforesaid Policy 5145.7, which is the moving force behind the deprivation of constitutional rights by the named defendants as alleged herein.

31. Parents A and B have standing to challenge that policy, whether or not Students C and D would actually "transition" to another gender, because, as *Mirabelli* held, parents are the very object of such policies.

32. Because Parents A and B are members of MFL, MFL has associational standing to bring this action on behalf of its members as the issues involved in this case are germane to MFL's

organizational purpose.[2] Standing is also conferred on MFL due to its necessary diversion of resources to oppose Policy 5145.7, including consultation with outside attorneys, study of the Policy and related documents, and the time in-house staff have devoted to participation in this litigation, including review of all pleadings and exhibits by in-house counsel and MFL's CEO, as opposed to MFL's other activities not involving litigation but rather public advocacy as a social welfare organization.

33. The preamble to Policy 5145.7 represents that the New Jersey Commissioner of Education "directs school districts to accept a student's asserted gender identity *regardless of parent* [sic] *consent or involvement.*" *See* **Exhibit A**, Policy 5145.7 (emphasis added).

34. There is no such "directive." As counsel for the Attorney General stipulated in litigation against the Hanover Township school district, New Jersey policy 5145.7—the "secret gender transition" policy on which Policy 5145.7 is modelled—is, as the Court in that case observed, merely "*a voluntary policy* anyway subject to repeal by the [local] Board [of Education] at any time", to which the Assistant Attorney replied "Correct." The Assistant Attorney General further stipulated: "Right. But it is correct that *this is not a policy that every district is mandated to have*." *See* **Exhibit B** at pp. 41-42 (official transcript of proceedings in *Platkin* v. *Hanover Twp. BOE and Hanover Twp. Public Schools*)(emphasis added).

35. Thus, the District was under no legal obligation whatsoever to adopt a policy of concealing purported "gender transitions" of children from their parents, and its representations to the contrary are false and misleading. Rather, in view of *Mirabelli* and the Supreme Court

---

[2] *See Pennsylvania Psychiatric Soc. v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 283-84 (3d Cir. 2002) (not even limited participation of individual members of association in the litigation vitiates associational standing).

precedents on parental rights that case cites, the District had a constitutional obligation *not* to adopt such a policy.

**Concealment of "Gender Transitions" from Parents**

36. The constitutional violations inherent in Policy 5145.7 begin with its provision barring parental notification and otherwise bypassing parental control where a child in K-12 purportedly "identifies" as a gender other than his or her own biological sex, requests that parents not be told of this, and a *school counselor*, in his or her sole and unfettered discretion, determines that this information should be hidden from the child's own parents. Stated more fully, the Policy provides, in pertinent part, as follows:

> The Commissioner of Education has stated that the responsibility for determining a student's gender-related identity rests with the student. Once a student notifies a school official that s/he would like to be referred to by a different pronoun or name, or requests to use the facilities associated with a different gender, his/her school counselor will meet with the student to confidentially discuss the request. During such meeting, the school counselor will also assess the student's parent/guardian's knowledge, if any, of the student's request. If the student's parent/guardian is not aware of the request, *the school counselor will assess whether, and to what extent, parents/guardians can be involved*…. The Commissioner of Education directs school districts to accept a student's asserted gender identity *regardless of parent consent or involvement.*

**Exhibit A** at 2.

37. As noted, there is no "directive" of the Commissioner of Education that a student's purported "gender transition" must be accepted by school districts without parental consent or involvement.

38. This blatant usurpation of the parental rights of Parents A and B, rights protected under both the Free Exercise and Due Process Clauses of the United States Constitution, is in direct contradiction to *Mirabelli* as well as its long-established precedents, including *Yoder*.

39. Policy 5145.7 is rife with other related violations of parental rights, including the rights of MFL members Parents A and B. In particular:

(a) "[T]he Principal or designee, along with the student's assigned school counselor, will meet with the student at a confidential meeting to discuss school-related issues *such as the name and pronouns to be used by district staff referring to the student and the gender identification to be used on the student's records and/or class assignments*."

(b) "The District *shall ensure that a student is addressed by their chosen name and pronoun*, regardless of whether a legal name change or change in official school records has occurred."

(c) "The District shall issue school documentation for a student *using their chosen name, gender identity, and pronoun*." This provision violates the parental rights of Parents A and B by the official creation of what they believe would be false records denying the existence of their children's God-given gender.

(d) "The District *shall keep confidential a current, new, or prospective student's transgender or transitioning status*."

(e) "Schools *should address gender non-conforming, transgender, or transitioning students by their chosen name*."

(f) "The student's *birth name should be kept confidential* by school and district staff."

(g) "This file containing records of a student's birth name should only be shared with appropriate staff after consultation with the student."

(h) "If the student has previously been known at school or in school records by a birth name, *the principal should direct school personnel to use the student's chosen name* and not the student's birth name.

(i) "To ensure consistency among teachers, school administrators, substitute teachers and other staff, every effort should be made to immediately update student education records (i.e. attendance records, transcripts, individuals [sic] education programs, etc.*) with the student's chosen name and gender pronouns*, *consistent with the student's gender identity and expression*, and not circulate records with the student's birth name, unless directed by the student."

> (j) "The District shall report to the New Jersey Department of Education through NJ SMART a student's name or gender *based upon that student's chosen name and corresponding gender identity.*
>
> (k) If the District *changes a student's name or gender identity*, it must also maintain locally a separate record reflecting the student's legal name and sex assigned at birth until receipt of documentation of a legal change of name or gender.

40. These provisions, individually and collectively, further violate the parental rights of Parents A and B by allowing the District *to change a student's name and "gender identity" without parental consent* and then allowing the "transitioning" student to live an entire double life at school hidden from his or her parents, solely at the student's request as affirmed by a school counselor who has no right to interfere in the student's moral and religious development or to handle the obvious psychological issues involved in a student's professed gender dysphoria.

41. Incredibly enough, the District here purports to grant students de facto legal name changes at their whim, not only without parental notice or consent, but also without the formal judicial proceeding normally required for a name change under New Jersey statutory law. The potential for legal confusion causing serious problems for consistent record-keeping and conflicting identification documenting a student's academic record is evident, including a student's transcripts and diplomas issued under a merely assumed name. This is also problematic if "transgender" students given a new identity by the District later decide they are no longer "transgender" but simply the same boys or girls they were at birth with the same names their parents gave them.

**Punishment for Refusal to Utter Compelled Speech Regarding the Purported New Identity of "Transgender" Students**

42. These above-cited provisions, read in conjunction with the District's "harassment, intimidation and bullying" policy, Policy 5131.1, wrongfully compel Students C and D to parrot

falsehoods that would deny what they have been taught to believe is the true and unchangeable God-given gender of supposedly "transgender" students.

43. In view of these provisions, it is evident that the District requires students as well as staff to conform their speech respecting a purported "transgender" student to the student's purported new identity, because that new identity is not only officially recognized but also officially created by District personnel themselves via school records which are then reflected in the records of the New Jersey Department of Education.

44. The same compulsion would be present even in cases where a parent might consent to a child's "gender transition." In such cases the District would likely require that other students, including Students A and B, likewise conform their speech to that student's purported new "gender identity" and preferred pronouns under pain of discipline for "harassment, intimidation and bullying."

45. Given that Policy 5131.1 treats as a disciplinary infraction even "a single incident" of behavior supposedly motivated by "any actual or perceived characteristic, such as… sexual orientation, *gender identity or expression*", it is entirely likely that Students C and D will be subjected to discipline if, as Parents A and B have instructed their children to do, they conscientiously refuse to lie by pretending that a boy has become a girl, or that a girl has become a boy, or that someone they know by his or her given name, including a friend at school, now has a new name, or that a he or she in the singular is now to be referred to as "they" or "them" or some other arbitrary pronoun. *See* **Exhibit C** (Policy 5131.1, "Definition").

46. Moreover, Policy 5131.1 vests in the District Superintendent, Defendant Emily Sortino, sole discretion "to impose a consequence on a student for conduct away from school grounds that is consistent [sic] with the board's approved code of conduct…" *Id.* at 1. Thus, even

speech in *non-school settings*, including social media, is subject to this official demand for ideological conformity under threat of discipline. Under the "approved code of conduct", District Regulation 5600, the punishments for alleged "harassment" or the use of "foul, abusive, derogatory or demeaning language" include "deprivation of privileges," "detention," "Saturday detention," "in-school suspension," "suspension" and "expulsion." *See* **Exhibit D**, Regulation R 5600.

47. Parents A and B have counseled Students C and D to adhere to their Christian beliefs by refusing to pretend that a fellow student has changed his or her gender and must now be referred to by a different name and/or different pronouns that do not correspond to the reality of that student's God-given gender of male or female.

48. Students C and D wish to speak what they believe is the truth of this matter in all its aspects without fear of punishment, both in school and away from school grounds, particularly as they advance in years and increasingly advocate their Christian point of view, including in classroom discussions and debates and on social media. For example, they would refuse to say that Tommy is now Sally or that he is now to be referred to as "they" as this would involve uttering what they believe to be lies that contradict their own religious and moral beliefs.

49. Thus, Parents A and B reasonably fear that Students C and D will be subject to discipline for "harassment, intimidation and bullying" if they refuse to address a fellow student according to that student's purported new gender, or with the student's preferred "gender pronouns" despite the student's undeniable biological gender, which Parents A and B and Students C and D believe is God-given and thus unchangeable.[3] Such discipline would have obvious adverse

---

[3] *See Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*, 158 F.4th 732, 743 (6th Cir. 2025) (reversing district court, finding associational standing, and ordering the issuance of a preliminary injunction in favor of Defending Education where the defendant school district "admits that it will continue to bar what it calls 'misgendering' if it determines that this speech 'rises to the level of bullying or harassment'" and the district "thus might punish a student for

consequences for the academic future of Students C and D, particularly with respect to college admissions.

50. As to Parents A and B, these speech restrictions violate the Free Speech and Free Exercise Clauses of the First Amendment and the Fourteenth Amendment rights of Parents A and B to direct the upbringing of their children. As to Students C and D, these restrictions violate their First Amendment rights under the Free Speech and Free Exercise Clauses. These restrictions are not justified by any legitimate government interest, much less a compelling one, and thus cannot survive the required strict scrutiny.

**Compelled Participation with Males in Sports and in the Use of Private Spaces**

51. Further violations of parental rights are found in the following provisions of Policy 5145.7:

(a) "The District shall … Provide transitioning, gender-nonconforming, gender expansive, and transgender students with the same opportunities to participate in physical education and school activities as cisgender students."

(b) "[A] transgender student shall be eligible to participate in accordance with either their assigned sex at birth *or in accordance with their gender identity*, but not both.

(c) "Transitioning, transgender, gender-nonconforming and/or gender-expansive students *will be provided access to facilities, including but not limited to restrooms, locker rooms, and changing facilities* in accordance with their gender identity where feasible and appropriate after consideration of the student's age and unique circumstances.

52. These provisions violate the parental rights of Parents A and B by compelling their female children, without notice to or control by parents, to engage in what they believe would be

---

using biological pronouns because the District could perceive that speech as creating an 'offensive' educational environment—no matter the student's audience, the student's good faith, or any other circumstance.")

immoral and even physically dangerous participation with biological boys in activities and the mixed use of spaces traditionally reserved for members of the same sex for reasons of privacy, modesty and safety.

53. The safety concern rises as the biological differences in size and strength between boys and girls increase in the higher grades and biological girls are forced to compete with a physically superior, biological boy merely because the boy declares that he is a girl.

54. Given the District's unconstitutional policy of hiding "gender transitions" from parents and the general public and literally pretending that a biological boy is a girl, merely because the boy says so, Parents A and B would never be notified in advance that biological boys were participating in team sports and sharing locker rooms, changing facilities and showers with their two girls, as well as any rooming arrangements necessitated by sports team events requiring overnight travel. Their parental rights are thus violated by the District's institutional refusal to reveal circumstances that would involve psychological trauma or even physical harm before they occur.

55. The same provisions also violate the rights of Parents A and B, and Students C and D, to the modesty and privacy mandated by the tenets of their Christian religion and traditionally respected for centuries by appropriate segregation of the sexes in sports and private spaces.

56. Said provisions of the District's policy also constitute constitutionally impermissible pressure to conform in practice to a set of values and beliefs contrary to the religious beliefs of Parents A and B and Students C and D.

57. Parents A and B further regard such compulsory mixing of the sexes, without regard to God-given biological gender, as a form of sexual harassment and child abuse in violation of

their parental rights, as well as the rights of Students C and D themselves under the Due Process Clause of the Fourteenth Amendment.

58. Members of MFL, including Parents A and B are thus entitled to immediate *prior* notice that biological boys will be participating with girls in team sports and sharing locker rooms, showers and changing facilities, as well as rooming arrangements during traveling team events, so that they can opt their children out of such situations in advance of their occurrence and before any psychological or physical harm can occur.

**Parentally Unauthorized Referral of Students to "Pro-Trans" Organizations**

59. Policy 5145.7 further violates parental rights by providing for the "confidential" referral of students by school personnel to a list of private, non-governmental organizations that "provide support to transgender individuals" without parental notification or consent.

60. The "support" these organizations supposedly provide is advocacy for, and encouragement of, sexual behaviors radically contrary to the beliefs of Christian MFL members, including Parents A and B, who have formed their children, Students C and D, in those same Christian beliefs.

61. Further, under no circumstances would MFL members, including Parents A and B, allow the referral of children, without their consent, to "LGBTQ" and "transgender" "support" organizations, some of which engage in psychological counseling designed to "affirm" so-called "gender identities" or "sexual orientations" which MFL members, including Parents A and B, believe to be contrary to God's law and their Christian beliefs.

**The District's Refusal to Abide by the Constitution**

62. On May 26, 2026, the undersigned counsel demanded that the District (a) rescind Policy 5145.7 in its entirety, or suspend its operation until a policy compliant with *Mirabelli* can

be adopted; (b) confirm in writing that District personnel will provide parents advance notice and opportunity to opt out of a student's asserted gender transition and any and all social transition-related accommodations at school; (c) confirm in writing that District personnel will not use a student's asserted name or pronouns contrary to parental direction; (d) confirm that District records will not be altered to reflect a child's asserted social transition to a different gender, nor maintained in a manner that conceals any such purported transition from parents or conflicts with parents' expressed wishes about their child's gender; and (e) preserve all documents, communications, training materials, guidance, and electronically stored information relating to Policy 5145.7, student name/pronoun changes, confidentiality plans, counseling referrals, and communications with the New Jersey Department of Education concerning these matters.

63. Counsel received no reply to these demands. Rather, on June 15, 2026, the President of the Defendant District's Board of Education, Defendant Ann Ciccarelli, stated publicly at a Board meeting, in pertinent part, as follows:

> The United States Supreme Court decision *Mirabelli* is ***not*** [spoken with emphasis] binding on public school districts in New Jersey…. What is binding on the school district of the Chathams is the New Jersey Law against Discrimination. Also binding are the Commissioner of Education Regulations that require equitable access to school facilities. Also binding are New Jersey Department of Education guidance.[4]

64. These representations to the public were false and misleading. As noted, the Office of the Attorney General has stipulated in litigation that no school district is bound to follow the "guidance" of the Commission of Education in its *optional* Policy 5756. Further, no state regulation whatsoever compels a school district to hide supposed "gender transitions" by students from their parents or to conceal from parents what they would view as religiously and morally

---

[4] *Cf.* note 1, *supra.*

unacceptable participation by their children with members of the opposite sex in activities and spaces traditionally reserved to members of one sex for reasons of privacy, modesty and safety.

**The Need for Equitable Relief**

65. Given the constitutional violations pleaded above, Parents A and B and Students C and D, and thus MFL as an association, will suffer irreparable harm absent injunctive relief preventing enforcement of the above-cited provisions of Policy 5145.7 as well as its application via Policy 5131.1 and the related Regulation R 5600.

66. Said irreparable harm is imminent in that the school year in the District will commence on August 31, 2026, and the District has refused to rescind Policy 5145.7 or even to allow an opt-out of a student's asserted "gender transition" process and any and all social transition-related accommodations at school.

67. MFL has standing to assert such irreparable harm on behalf of Parents A and B and Students C and D given the parents' membership in MFL.

68. MFL thus also has standing to seek appropriate declaratory relief.

**COUNT I**

**Violation of the First Amendment: Free Exercise**

69. Plaintiff incorporates by reference paragraphs 1-68 of this Verified Complaint.

70. Policy 5145.7, both facially and as applied, violates the parental right of MFL's members, including Parents A and B, to control the religious and moral development of their children without interference by the state and thus violates their right to the free exercise of religion under the First Amendment.

71. Policy 5145.7 also violates the rights of the children of MFL's members, including Students C and D, to the free exercise of religion, which MFL's parent members have the right to assert on their minor children's behalf.

72. Policy 5145.7 was adopted by the District under color of state law, and the named District officials are acting under color of state law within the meaning of § 1983.

**COUNT II**

**Violation of the Fourteenth Amendment: Parental Rights**

73. Plaintiff incorporates by reference paragraphs 1-68 of this Verified Complaint.

74. The role of parents in the upbringing of their children, including their religious and moral development, is a freedom deeply rooted in American history and is thus protected by the Due Process Clause of the Fourteenth Amendment, as the Supreme Court has recognized time and again, most recently in both *Mahmoud* and *Mirabelli.*

75. Policy 5145.7 violates the due Process rights of MFL's members, including Parents A and B, because it interferes with the upbringing of their children according to religious and moral beliefs at odds with the District's official "transgender" ideology.

76. Policy 5145.7 was adopted by the District under color of state law, and the named District officials are acting under color of state law within the meaning of § 1983.

**COUNT III**

**Violation of the First Amendment: Freedom of Speech**

77. Plaintiff incorporates by reference paragraphs 1-68 of this Verified Complaint.

78. By compelling students and their parents to conform themselves to the District's "transgender" ideology by reciting the "preferred pronouns" and new names of students who purport to have changed their gender, failing which non-conforming students could be formally disciplined for "harassment, intimidation or bullying" under Policy 5131.1 for even a single incident of refusing to go along with this ideologically mandated pretense, the District is engaging in presumptively unconstitutional content- and viewpoint-based restrictions of speech for which there is no legitimate, much less compelling, state interest.

79. Under Policy 5131.1 and the related Code of Conduct in R 5600, the speech restrictions imposed by Policy 5145.7 apply even "away from school grounds," thus making students susceptible to governmental discipline for protected speech even in off-campus settings, including social media.

80. Policy 5145.7, read together with Policy 5131.1 and R 5600, is thus violative of the free speech rights of MFL's members, both facially and as applied, including the free speech rights of Parents A and B, and Students C and D on whose behalf Parents A and B assert their First Amendment rights.

81. Policy 5145.7 was adopted by the District under color of state law, and the named District officials are acting under color of state law within the meaning of § 1983

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Moms for Liberty requests the entry of judgment in favor of Plaintiff and against Defendants for the following relief:

A. A declaratory judgment that the challenged provisions of Policy 5145.7, both facially and as applied, including their application in conjunction with Policy 5131.1 and the Code of Conduct in regulation R 5600, violate the Free Speech and Free Exercise Clauses of the First Amendment and the Due Process Clause of the Fourteenth Amendment.

B. Preliminary and permanent injunctive relief barring defendants from enforcing Policy 5145.7 as written and requiring the District to amend the policy to provide for:

(1) advance notice to parents and an opportunity to opt out, and countermand, a student's asserted "gender transition" and any and all social transition-related accommodations at school before they occur;

(2) no use of a purported "transgender" student's asserted new name or pronouns without prior parental notice and consent, or contrary to parental direction;

(3) no alteration of school records to reflect a purported "transgender" student's asserted social transition to a different gender without prior parental notice and consent, or contrary to parental direction, nor any maintenance of records in a

manner that conceals any such purported transition from parents or conflicts with parents' expressed wishes about their child's gender;

(4) no requirement that any student address a purported "transgender" student by the student's purported new gender, new name or chosen pronouns, nor any punishment for a student's refusal to do so as "harassment, intimidation or bullying" or any other alleged infraction of District policies;

(5) no referral of any student to any "support" or advocacy group for LGBTQ or "transgender individuals" without written parental consent, nor any counseling of purported "transgender" students without parental consent.

C. An award of nominal damages;

D. Attorney fees and costs as provided by 42 U.S.C. § 1988 and all other applicable laws; and

E. Such other relief as this Court deems just and proper.

Respectfully submitted, this 24th day of August, 2026.



Christopher A. Ferrara
Senior Counsel
THOMAS MORE SOCIETY
420 Route 46 East, Ste. 12
Fairfield, NJ 07004
Telephone: (973) 244-9895
cferrara@thomasmoresociety.org

B. Tyler Brooks†
Senior Counsel
THOMAS MORE SOCIETY
121 West Wacker Drive, Ste. 650
Chicago, IL 60601
Telephone: (312) 782-1680
tbrooks@thomasmoresociety.org

Nathan Loyd†
Staff Counsel
THOMAS MORE SOCIETY
121 West Wacker Drive, Ste. 650
Chicago, IL 60601
Telephone: (312) 782-1680
nloyd@thomasmoresociety.org

*Counsel for Plaintiff Moms for Liberty*

† *pro hac vice* forthcoming.

## VERIFICATION

I, Tina Descovich, declare as follows:

1. I am the CEO and Co-Founder of Moms for Liberty, the Plaintiff in this case.
2. I have reviewed this complaint.
3. For the allegations within my personal knowledge, I believe them all to be true.
4. For the allegations not within my personal knowledge, I believe them all to be true based on my review of the cited policies and documents and based on my conversations with members of Moms for Liberty, including parents A and B.
5. I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 24, 2026

Tina Descovich

Tina Descovich
CEO and Co-Founder